UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BYRON AUTMAN,

    Plaintiff,

v.

    Case No. 2:08-cv-87
    HON. ROBERT HOLMES BELL

DAN DURANT, et al.,

    Defendants.

_____/

# REPORT AND RECOMMENDATION

Plaintiff Byron Autman, an inmate currently confined at the St. Louis Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Defendants Hearing Investigator Dan Durant, Corrections Officer Unknown Bennett, Sergeant Unknown Colbin, Hearing Officer Unknown Jacobson, Unknown Party, R.N., Cathy Williams, R.N., Rich Miller, P.A., Ann Morin, R.N., and Unknown Party Pharmacy Tech.

Plaintiff's complaint alleges that he is African American and that on September 19, 2005, Plaintiff was in the quiet room when he was ordered by URF custody staff to clear the area due to a fight involving other combatants. Plaintiff left the area, carrying his coffee, when Defendant Bennett came running into the unit and bumped into Plaintiff. This caused him to spill coffee on Defendant Bennett's sleeve, which resulted in a minor burn. Plaintiff states that because of Defendant Bennett's recklessness in running into him, he sustained a back injury that continues to cause him pain.

Plaintiff returned to his cell and filled out a medical request form, to be placed in the health care box the next time Plaintiff went to the dining hall. Approximately two hours later, Plaintiff was called to the lobby and taken to administrative segregation. Shortly thereafter, Defendant Colbin reviewed Plaintiff on a misconduct ticket for serious staff assault. Plaintiff requested the videotape from the Neebish Unit lobby and witnesses on his behalf. Defendant Colbin failed to ensure that the videotape was preserved as required per policy. Defendant Jacobson later stated that there was no video footage, but School Teacher J. Burtt told Plaintiff that he had been told that there was such footage. Plaintiff claims that Defendants violated his due process rights in relation to his misconduct hearing, but states that he is not contesting the guilty finding.

Plaintiff alleges that on June 28, 2006, he spoke with Defendant Unknown Party R.N. in an attempt to get refills of his blood pressure medication, but that Defendant Unknown Party R.N. continued walking away when he told her that he had been sick with a headache for at least four days. Plaintiff claims that his medication problem continued even when medical staff stated that they would take care of the problem. Plaintiff contends that he requires medication to control his high blood pressure and that he could have suffered a stroke or heart attack without his medication. Defendant Unknown Party R.N. was deliberately indifferent to Plaintiff and refused to stop during her rounds to address Plaintiff's health care requests. Plaintiff claims that he filed a grievance and appealed the denial to step III.

Plaintiff states that on July 29, 2006, and July 30, 2006, he tried to speak with Defendant Williams about his appointment with Defendant Miller, but Defendant Williams refused to stop and speak to Plaintiff. In addition, Defendant Morin lied to Plaintiff and told him that she had scheduled him for an appointment. Plaintiff contends that Defendant Miller has refused to have Plaintiff's medications delivered in a timely manner the majority of the time and that Defendants

Morin and Williams refused to order Plaintiff's high blood pressure medication, which caused Plaintiff to be "sick." Plaintiff alleges that Defendant Unknown Party Pharmacy Tech. failed to submit timely refills causing Plaintiff's blood pressure to be extremely high for days at a time. Plaintiff seeks compensatory, punitive and nominal damages.

Following an initial review by the court, service was ordered on Defendants Williams, Miller, and Morin with regard the alleged repeated delays in giving Plaintiff his prescribed high blood pressure medication. Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution.

Presently before the Court are the Motions for Summary Judgment filed by Defendants Williams and Morin pursuant to Fed. R. Civ. P. 56. The time for filing a response has elapsed and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Williams and Morin assert that they are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In support of their requests for summary judgment, Defendants offer Plaintiff's medical records as Exhibit B. With regard to Plaintiff's claim that Defendant Morin failed to schedule Plaintiff for an appointment for back pain, the record shows that she responded to Plaintiff's kite on July 4, 2006, and that she scheduled Plaintiff for an appointment on or about July 11, 2006. (*See* Defendants' Exhibit B, p. 24.) Plaintiff was given the opportunity to see a health care provider on July 17, 2006, but refused his medical callout. (*See* Defendants' Exhibit B, p. 25.)

In her affidavit, Defendant Morin attests that Plaintiff's July 4, 2006, kite was the first time that Plaintiff had complained of back pain, that Plaintiff had never been diagnosed as having chronic back pain, and that he was not taking any pain medications when he arrived at AMF. Defendant Morin did not speak with Plaintiff face to face, but answered his kite in writing. Plaintiff

refused his callout on July 17, 2006, and when he finally came out to see the nurse on July 24, 2006, he did not complain of back pain. (*See* Defendants' Exhibit A, ¶¶ 7-10.)

With regard to Plaintiff's claim that Defendants Morin and Williams refused to give him his hypertension medication, Defendant Morin denies ever refusing to give Plaintiff his medications as ordered. (*See* Defendants' Exhibit A, ¶ 13.) In her affidavit, Defendant Morin states that Plaintiff arrived at AMF in March of 2006, and was seen by the medical provider on March 29, 2006, at which point his medications were continued as ordered. Labs were ordered and reviewed by the medical provider on June 13, 2006. Plaintiff kited for medication refills on May 26, 2006, and received his refills. (*See* Defendants' Exhibit A, ¶¶ 3-6.) Plaintiff was scheduled to be seen by the medical provider for his cardiac chronic care clinic on August 11, 2006, and August 21, 2006, but Plaintiff refused to be seen. On August 29, 2006, Plaintiff saw the medical provider and his medications were renewed. Plaintiff received his medications within 24 hours of the order date. (*See* Defendants' Exhibit A, ¶¶ 11-13.)

Defendants also note that in Plaintiff's complaint, his assertion that Defendants Morin and Williams knew that Plaintiff had hypertension and deliberately refused to order his medication is unsupported by specific factual allegations. The only specific factual allegation is that "Def Unknown R/N" should have addressed his medication concerns during that nurse's rounds on June 18, 2006. However, this Defendant is identified as a separate party from either Defendant Williams or Defendant Morin. (*See* Plaintiff's complaint, ¶¶ 4, 29-32, 36.) Finally, Defendants state that Plaintiff's medical record does not support a finding that he suffered a detrimental effect from the delay in receiving treatment.

In the opinion of the undersigned, Defendants have succeeded in demonstrating that they did not act with deliberate indifference in violation of Plaintiff's Eighth Amendment rights. It

appears that the delay in receiving Plaintiff's medication refills was an oversight, and that it was corrected once Plaintiff kited about his lack of medications. Therefore, Defendants Williams and Morin are entitled to summary judgment.

Accordingly, it is recommended that Defendants' Motions for Summary Judgment (Docket #23 and #38) be granted. In addition, it is recommended that Defendant Miller be dismissed for lack of service and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2010